THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TAMI MANGAN | : |
| | : |
|       Plaintiff | : |
| v. | :   3:11-cv-2277 |
| | :   (JUDGE MARIANI) |
| THE COMMONWEALTH MEDICAL COLLEGE | : |
| | : |
|       Defendant | : |

## MEMORANDUM OPINION

This matter arises upon the Complaint of Plaintiff, Tami Mangan ("Plaintiff"), in which she asserts that Defendant, The Commonwealth Medical College ("Defendant"), discriminated against her on the basis of sex in violation of both state and federal law. In response to Plaintiff's Complaint, Defendant filed a timely Motion to Dismiss, which is now ripe for adjudication.

### I.   BACKGROUND

The allegations of Plaintiff's Complaint are summarized as follows:

On October 27, 2008, Plaintiff began working for Defendant as Director of Accounting. She is a certified public accountant, and was the only female to hold a "director" level position with Defendant. Plaintiff alleges that she was paid a salary of $80,000 per year, in addition to substantial vacation and personal time, and a bonus. Plaintiff further alleges, however, that she was paid a significantly lower salary than her

comparable male counterparts, and that her bonuses never materialized while men at her level received large awards. Plaintiff also claims she was segregated from the men employed at her level, given a noticeably less glamorous office, and was not provided with a Blackberry like all other director level staffers. As time progressed, Plaintiff was re-assigned to lesser duties than those usually bestowed upon a director level employee. Finally, Plaintiff argues that she was wrongfully demoted under the guise of "cost-cutting," and that certain accounting errors were blamed on her although they were caused by the actions of an outside contractor.

## II. STANDARD

In light of the Supreme Court's decisions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 433 (2007), and *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009), the Middle District of Pennsylvania has adopted the following standard by which to treat motions to dismiss. "[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true to 'state a claim that relief is plausible on its face.'" *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 570). In *Iqbal*, the Court emphasized that "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950. Furthermore, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (citation omitted); *McTernan v. City of York*, 577 F.3d 521, 530 (3d Cir. 2009).

District courts confronted by a motion to dismiss should engage in a two-step analysis. First, the district court should accept all well-pleaded facts as true, but may reject mere legal conclusions. Second, the district court should then determine whether the facts, as asserted, establish a "plausible claim for relief." *Iqbal*, 129 S.Ct. at 1950. Thus, a complaint must "show" an entitlement to relief with facts, as a mere allegation that a plaintiff is entitled to relief is insufficient to withstand a motion to dismiss. *See Philips v. Co. of Allegheny*, 515 F.3d 224, 234-35 (3d Cir. 2008). As the Supreme Court instructed in *Iqbal*, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 129 S.Ct. at 1949. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*; *see also McTernan, Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).

## III. DISCUSSION

The Motion to Dismiss encompasses three distinct issues: (1) the propriety of injunctive relief pursuant to Title VII of the Civil Rights Act of 1964, 47 U.S.C. § 2000e, *et seq.*; (2) the ability of Plaintiff to sue for punitive damages under Title VII; and (3) the availability of punitive damages under the Pennsylvania Human Relations Act, 43 Pa. Stat. § 855.

Defendant's Motion first challenges Plaintiff's request for injunctive relief under Title VII, which permits a federal court to enjoin a party from engaging in an unlawful employment practice. *See* 42 U.S.C. § 2000e-5(g). The Supreme Court explicitly held that federal courts can impose injunctive relief to prevent a sustained pattern or practice of discrimination. *See Int'l Brotherhood of Teamsters v. United States*, 431 U.S. 324, 330-31, 342 (1977); *see also Sprogis v. United Air Lines, Inc.*, 444 F.2d 1194, 1201-02 (7th Cir. 1971)(persistence of an employer's discriminatory practices may permit imposition of injunctive relief); *Prise v. Alderwoods Group, Inc.*, 06-1470, 2010 WL 3432299, at *4 (W.D. Pa. Aug. 31, 2010)(injunctive relief available for violations of Title VII). Defendant acknowledges that under the statute, "once the Court has found that the defendant has 'intentionally' engaged in the unlawful employment practice charged in the complaint, the Court may enjoin the defendant from 'engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, [including] . . . any other equitable relief as the court deems appropriate.'" *See Def.'s Br. in Supp. Mot. to Dismiss*, at 3-4, ECF Dkt. 9 (quoting 42 U.S.C. 2000e-5(g)). Defendant argues, however, that Plaintiff makes a "vague request" for "[a]n injunction prohibiting Defendant from engaging in future violations of Title VII." *See id.* at 4. Defendant claims that this single sentence is insufficient to establish a claim for injunctive relief. Defendant further argues that Plaintiff does not allege the precise employment practice she wishes to enjoin. Finally, Defendant argues that an injunction "will

not abate any alleged harm" suffered by Plaintiff, as she is no longer employed with Defendant.

In the present matter, where discovery is in its nascent stages, it would be premature to conclude that equitable relief is unavailable to prevent the possible continuation of legal infractions by Defendant. Although the question of whether Plaintiff is entitled to equitable relief remains unresolved, Plaintiff should not be prohibited from seeking such relief, nor should she be prevented from providing evidence of possible ongoing discrimination. See Prise, 2010 WL 3432299, at *4 ("at minimum, plaintiff needed to show evidence of ongoing discrimination"). In this matter, there may ultimately be a basis for injunctive relief if Plaintiff can show systematic or continuing discrimination notwithstanding that Plaintiff is no longer employed by Defendant. See Meyer v. Brown & Root Constr. Co., 661 F.2d 369, 374 (5th Cir. 1981)("Injunctive relief which benefits non-parties may sometimes be proper even where the suit is not brought as a Rule 23 class action. The Ninth Circuit recognized this fact in Gregory v. Litton Systems, Inc., 472 F.2d 631 (9th Cir. 1972), and we approve it here.").

Defendant's Motion next challenges Plaintiff's claim for punitive damages under Title VII. A plaintiff in a Title VII action may recover punitive damages for intentional discrimination where "the complaining party demonstrates that the respondent engaged in . . . discriminatory practices with malice or with reckless indifference to . . . federally protected rights." Le v. Univ. of Pa., 321 F.3d 403, 409 n.4 (3d Cir. 2003). In Kolstad v. Am. Dental.

*Assoc.*, 527 U.S. 526 (1999), the Supreme Court examined the circumstances in which punitive damages are awarded under Title VII. The Supreme Court held that Congress created a "two-tiered structure" for punitive and compensatory damages pursuant to § 1981a, and held that punitive damages must be based upon a higher standard. The Court held:

> The very structure of § 1981a suggests a congressional intent to authorize punitive awards in only a subset of cases involving intentional discrimination. Section 1981a(a)(1) limits compensatory and punitive awards to instances of intentional discrimination, while § 1981a(b)(1) requires plaintiffs to make an additional "demonstrat [ion]" of their eligibility for punitive damages. Congress plainly sought to impose two standards of liability—one for establishing a right to compensatory damages and another, higher standard that a plaintiff must satisfy to qualify for a punitive award.

*Kolstad*, 527 U.S. at 534.

Defendant notes that the Supreme Court further found that the "terms 'malice' and 'reckless' ultimately focus on the actor's state of mind," and pertain "to the employer's knowledge that it may be acting in violation of federal law, not its awareness that it is engaging in discrimination." *Id.* at 535. Plaintiff claims that she earned a lower salary and received less vacation time than her male co-workers of equal rank, and that she was never given bonuses while her male co-workers reaped thousands of dollars in additional pay. However, Defendant claims, Plaintiff does not allege any facts that "rise to the level of conduct necessary to make a claim for punitive damages." *See Def.'s Br. in Supp. Mot. to Dismiss*, at 5. Defendant argues that Plaintiff failed to allege facts showing the requisite intent to violate Title VII or which demonstrate Defendant's knowledge that it may have

acted in violation of federal law. *See id.* At the pleading stage, Plaintiff need only allege facts that, if true, would establish the elements of a cause of action. The question of whether Plaintiff's punitive damages claim is sustainable requires development of the record through discovery. Dismissal of this claim, at present, would be premature.

Finally, Plaintiff's request for punitive damages under the PHRA is without merit and should be dismissed. The Pennsylvania Supreme Court is unambiguous in its instruction that punitive damages under the PHRA are not permitted. *See Hoy v. Angelone*, 554 Pa. 134 (1998). It must be noted that Plaintiff asserts in an affidavit that she is voluntarily withdrawing this claim; however, given that such a withdrawal is not contained in a formal pleading, the Court will dismiss it with prejudice.

## IV. CONCLUSION

For the reasons set forth in this memorandum, Defendant's Motion to Dismiss will be Granted in Part and Denied in Part.

DATE: June 5, 2012

Robert D. Mariani
United States District Judge